ISMAEL MIRANDA COLÓN, peticionario, *v.* TRIBUNAL SUPERIOR
DE PUERTO RICO, SALA DE SAN JUAN, HON. BALDOMERO
FREYRE, JUEZ, demandado.

*Número:* C-62-89      *Resuelto:* 6 de mayo de 1963

*Rubén Rodríguez Antongiorgi,* abogado designado por el Tribunal
Supremo para prestar servicios profesionales al peticionario;
*Rodolfo Cruz Contreras, Procurador General Interino,* y
*Héctor R. Orlandi Gómez, Procurador General Auxiliar,* abo-
gados de El Pueblo.

---

(¹) Por la naturaleza del interrogatorio nos abstenemos de insertarlo.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ MATOS emitió la opinión del Tribunal.

Esclarecidos los hechos de la petición a la luz de los autos originales después de ser elevados ante nos, se reinstala al procedimiento su naturaleza revisora como recurso de *certiorari*[1] y así lo trataremos a los fines de establecer la procedencia de los términos de la sentencia impuesta en este caso y resolver si la doctrina sentada en *Pueblo* v. *Liceaga*, 36 D.P.R. 443 (1927)—efectos de la declaración de culpabilidad por delitos corrientes sin agravantes—ha sido alterada adversamente por la Ley Núm. 295 de 1946, según enmendada por la Núm. 176 de 1949, y la Núm. 117 de 26 de junio de 1961, relativas a las sentencias indeterminadas.

Designamos al Lic. Rubén Rodríguez Antongiorgi abogado de oficio del peticionario a fin de que le brindara los servicios profesionales necesarios en el caso. Ambas partes han presentado interesantes informes escritos sobre los puntos envueltos.

Se acusó al peticionario ante el Tribunal Superior, Sala de San Juan, por los delitos de ataque para cometer asesinato, portación ilegal de armas y posesión de armas prohibidas. En todos los casos formuló alegación de no culpable. Llamados los casos para vista en sus méritos ante tribunal de derecho, a solicitud del fiscal se rebajó la calificación del delito principal a uno de ataque para cometer homicidio. El acusado entonces por sus abogados y personalmente, retiró sus alegaciones de no culpable e hizo, en cada caso, una alegación de culpable.

En 1 de junio de 1961, en el caso G-60-594, ataque para cometer homicidio, se le impuso una pena indeterminada de 2

---

[1] Habiéndose oído al Procurador General en los méritos damos por expedido el auto.

a 5 años de presidio con trabajos forzados; en el G-60-593, por el de portar armas, de 1 a 3 años de presidio, para ser cumplida concurrentemente con la anterior y en el M-60-538 por el de posesión de armas, una pena de seis meses de cárcel.

El 7 de agosto de 1962, mientras cumplía en presidio las dos primeras sentencias, solicitó del Tribunal Superior, por escrito, que los términos de las mismas fueran modificados, invocando el citado caso de *Liceaga* y las circunstancias de (a) haber él hecho declaración de culpabilidad, (b) carecer de antecedentes penales y tratarse de su primer caso, (c) de no haberse probado factores agravantes en la comisión del delito principal y (d) en que no se investigó su conducta y condiciones personales antes de pronunciarse sentencia en su contra. El fiscal se opuso a la modificación de la sentencia alegando que el tribunal de instancia carecía de facultad para ello porque el peticionario se encontraba entonces "bajo la jurisdicción de lo ejecutivo." El 14 de agosto de 1962 se declaró de plano sin lugar esa petición de reconsideración.

La doctrina del caso de *Liceaga* al efecto de que "cuando un acusado se hace culpable de un delito que revela una infracción corriente y no se practica prueba sobre circunstancias agravantes, no está justificada la imposición de la pena máxima", no ha sido alterada, en lo fundamental, por casos posteriores. Como muy bien sostiene el letrado del peticionario, la Ley de Sentencias Indeterminadas no alteró aquella doctrina. Sus fundamentos los expone así:

"La Ley de Sentencias Indeterminadas reconoce y consagra el principio de la discreción judicial para la individualización de la pena, aunque imponiéndole el deber de fijar un mínimo en la sentencia. El máximo que puede imponerse bajo el nuevo régimen sigue siendo el máximo autorizado por ley para el delito específico. Así pues, no habiendo modificado la Ley la pena máxima a ser impuesta, creemos que no fue la intención legislativa variar la doctrina jurisprudencial sentada por este Tribunal que se refiere específicamente a la pena máxima imponible y *no a la indeterminación de la sentencia.*

304

"Entendemos que la *raison d'etre* de la doctrina establecida por este Honorable Tribunal en *Laureano y Liceaga* no ha sido alterada por la Ley de Sentencias Indeterminadas.

"Existen numerosas razones para justificar la vigencia de la doctrina sentada en *Laureano* y *Liceaga*. Veamos.

"1. Muchos tribunales sostienen la posición de que una declaración de culpabilidad demuestra que el acusado acepta la responsabilidad por su actuación delictiva y que está arrepentido, lo cual representa un paso importante hacia la rehabilitación del acusado. Nota, *'The Influence of the Defendant's Plea on Judicial Determination of Sentence'*, 66 Yale L.J. 204, 209 (1956). Por tal razón, muchos jueces admiten que cuando el acusado se declara culpable tiene derecho a una sentencia más liviana. Véase el interesante cuestionario dirigido a los jueces de Distrito Federales por el *Yale Law Journal*, citado en la Nota anterior.

"2. Muchos de los jueces en sus respuestas al Cuestionario arriba mencionado expresaron su creencia de que un acusado que se declara culpable debiera recibir una sentencia menor por su contribución, mediante alegación de culpabilidad, a la eficiente y económica administración de la justicia. *Nota*, Id. Cuando el acusado se declara culpable el estado se economiza el tiempo y dinero que conllevaría un juicio en sus méritos. Las alegaciones de culpabilidad ayudan a mantener al día los calendarios de los tribunales, haciéndole posible un juicio rápido en aquellos casos en los cuales el acusado se declara inocente. *Nota*, 33 Cornell L.Q. 408–09 (1948). Véase también Newman, *Pleading Guilty for Considerations, A Study of Bargain Justice,* 46 J. Crim. L., C. & P.S. 780 (1956) ; Weintraub & Tough, *Lesser Pleas Considered,* 32 J. Crim. L. & Criminology 506 (1939).

"3. La necesidad de evitar sentencias máximas, desde el punto de vista de la administración de la justicia, fue expresada en el informe rendido por el *Advisory Council of Judges* al *American Law Institute*:

'The scale of prison terms is too high. W[e] have a mounting number of prisoners, and the ratio of prisoners to the general population is constantly increasing. It has resulted in a round of overcrowding and need for new institutions, and the trend certainly will be continued unless the means are found to change the sentencing picture. We should look for a pattern of lower rather than higher maximum terms.

Our experience today is that we can safely release individuals earlier, particularly if we provide professional help to supervise them on parole.'

"Citado por Rubin, *Sentencing & Correctional Treatment Under the Law Institute's Model Penal Code,* 46 A.B.A. 994, 995 (1960)."

Las palabras de la Exposición de Motivos adicionada a la Ley de Sentencias Indeterminadas por la Ley Núm. 176 de 1949, de que esa ley permite "que se impongan sentencias con un margen de fluctuación razonable entre el mínimo más bajo posible y el máximo más alto posible", no señalan necesariamente a los mínimos y los máximos prefijados por el estatuto. Más bien le indican al juez sentenciador que se trata del mínimo y del máximo dentro de los fijados por la ley que en su criterio permitan un margen de fluctuación razonable, tomadas en cuenta todas las circunstancias concurrentes en cada caso.

Es cierto, como expone el Procurador General Interino, que mientras más alto es el máximo, mayor es la rebaja o bonificación por buena conducta, pero esta regla no implica que en todos los casos debe fijarse el máximo más severo fijado por ley.

En este caso por el atentado para cometer homicidio se fijó el máximo de 5 años de presidio que es la pena mayor permitida por el estatuto. Véanse Arts. 50(1) y 204 del Código Penal. Las circunstancias especiales que concurren en este caso nos inclinan a ejercitar nuestra discreción en el sentido de *modificar la sentencia indeterminada dictada en el caso G-60-594, de ataque para cometer homicidio, rebajándola a un mínimo de un año y a un máximo de tres años de presidio, con trabajos forzados.*

Este Tribunal hace reconocimiento al letrado Rubén Rodríguez Antongiorgi por su magnífica aportación a la resolución del presente recurso, declarando que en la defensa de oficio de su cliente ha ido más allá de lo que sus deberes ordinarios le obligaban.